IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NATIONAL SIGNS, LLC | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| NATIONWIDE SIGNS, LLC | § | TRIAL BY JURY DEMANDED |

**PLAINTIFF'S ORIGINAL COMPLAINT AND
APPLICATION FOR TEMPORARY RESTRAINING ORDER,
PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff National Signs, LLC files this Complaint stating claims against Defendant Nationwide Signs, LLC. Additionally, National Signs, LLC asks the Court to grant temporary and permanent injunctive relief restraining Nationwide Signs, LLC from using the newly-coined "Nationwide Signs" name in its business, which competes directly against National Signs, LLC in the same geographic area, among other things.

PARTIES

1.  Plaintiff National Signs, LLC (National) is a Texas limited liability company with its principal office in Houston, Texas.

2.  Defendant Nationwide Signs, LLC (Nationwide) is a Texas limited liability company with its principal office in Houston, Texas. It may be served with process by service on its registered agent, John G. Cannon, Coats Rose P.C., 9 Greenway Plaza, Suite 1100, Houston, Texas  77046.

JURISDICTION

3. The Court has jurisdiction over the subject matter of this action under Section 39 of the Lanham Act, 15 USC § 1121. The Court has supplemental jurisdiction over the state-law claims under 28 USC §§ 1338(b) and 1367(a).

4. The Court has personal jurisdiction over Nationwide because Nationwide is a Texas limited liability company that conducts business within the State of Texas and has infringed National's trademark within Texas.

5. Venue is proper under 28 USC §§ 1391(b) and (c) because Nationwide has its principal office in the Southern District of Texas and a substantial portion of the events at issue have arisen and will arise in this judicial district. There is no more convenient forum.

NATURE OF ACTION

6. This is an action in law and in equity for trademark infringement, trademark dilution, false designation of origin, and unfair competition arising under the Lanham Act, 15 §§ 1051 *et seq.*, and for related claims of trademark infringement, unfair competition, dilution, and injury to business reputation under the Lanham Act and the statutory and common laws of the State of Texas.

7. National is a leading independent designer and manufacturer of custom signs. National owns valuable trademark rights in a mark containing the dominant term "National Signs" for use in connection with these products. Until January 9, 2017,

Nationwide did business in Houston for decades as Brite Lite Signs. On January 9, 2017, Ali Rassouli aka Al Ross announced that he had acquired Brite Lite Signs and changed the name from Brite Lite Signs to Nationwide Signs. In the announcement, Mr. Ross expressly connected his prior success with National Signs to the Nationwide business and brand.

      8.      By rebranding Brite Lite Signs to "Nationwide Signs" and by maintaining a domain name using the phrase "Nationwide Signs," among other actions taken in derogation of the National Signs Trademark, Nationwide has blatantly and willfully trampled on National's trademark rights.

      9.      Nationwide's use of the "Nationwide Signs" name and [www.nationwidesigns.com](www.nationwidesigns.com) domain has caused and will continue to cause consumer confusion. It is clear that Nationwide intends this confusion and intends to capitalize off it. As a result, National risks losing the value of its trademark, its product identity, and control over its goodwill and reputation. Accordingly, the harm that would be suffered by National as a result of Nationwide's infringement and unfair competition would be irreparable, and Nationwide's wrongful activities will continue unless enjoined.

## FACTS

      10.      Al Ross started using the National Signs mark in 1992 in connection with his company, National Signs, Ltd. Over the next twenty years, Ross built the National Signs business into the leading designer and manufacturer of custom signage and

largest provider of LED signs in the country. As a result, the National Signs mark became a meaningful and valuable mark, particularly in Texas.

11.     In April 2012, Al Ross and National Signs, LLC entered into a transaction through which Ross transferred substantially all the assets of his National Signs, Ltd. business (including the trademark and goodwill associated with the National Signs name) to a target entity (National), and sold that business to National Signs Holding, LLC. As Mr. Ross knows very well, National has continuously used the National Signs mark in its successful business designing and manufacturing custom signs.

12.     Nationwide is fully aware of the importance of the National Signs mark to National because Ross formed the Nationwide entity and leads it:

> We are led by industry icon Al Ross, who started the Houston-based sign company National Signs in 1992, which he sold at its peak in 2012.

http://www.nationwidesigns.com/about/who-we-are/.

13.     Ross and Nationwide clearly intend to trade off the confusion between the similarity of the two names:

> Brite Lite, which will undergo a name change to Nationwide Signs, has been on the radar of Al Ross Group throughout 2016. **As you know, I have a very long and successful history in the sign industry, having been the previous owner and founder of National Signs, LLC, which is also based in Houston. In 2012, at the height of the company's success, I sold National Signs**, and started another highly successful business, Al Ross Luxury Homes, LLC by acquiring desirable property in sought after River Oaks, then building and offering multi-million dollar homes to a select group of buyers.

Exhibit 1 (Nationwide's January 9, 2017 Announcement). Additionally, Nationwide acknowledges that it did not start its business until January 2017:

> The firm has many companies in various industries under the Al Ross Group umbrella, and their growth and expansion is impressive, to say the least. During a brainstorming session with his partners about additional industries to approach, Ross thought, "why not the sign industry?" **In January 2017, Al Ross Group and Brite Lite Signs made a deal. That was the birth of Nationwide Signs.**

http://www.nationwidesigns.com/about/who-we-are/.

14. Given Ross's long history with the National Signs business and mark, Ross and Nationwide are well aware that National has conducted its sign business as National Signs continuously since 1992, and that National has maintained its principal office in Texas. Likewise, they are well aware that National has used its National Signs mark in connection with and to identify its custom sign design and manufacturing services and products, and to distinguish those services and products from similar services and products offered by other companies by prominently displaying the mark on its websites, installed products, advertising, and promotional materials distributed throughout Texas and the United States.

15. National's customers are consumers, distributors, and the general public. The National Signs Trademark is inherently distinctive to the public and the trade with respect to its custom sign design and manufacturing services and products. The Trademark serves primarily as a designator of origin of products and services

emanating from or sponsored by National. In particular, consumers in the market commonly refer to National using the National Signs trademark.

16. A strong association exists between the National Signs Trademark and its custom sign design and manufacturing services and products. National has deliberately and consistently reinforced such association by spending substantial amounts of money on advertising and branding campaigns using the National Signs Trademark.

17. The quality of National's custom sign design and manufacturing services and products has been recognized by numerous industry awards and nominations for those awards, as well as many positive reviews and endorsements from their customers.

18. In addition, National has made extensive use of the National Signs Trademark in connection with its www.Nationalsigns.com website for well over a decade.

19. As a result of the widespread promotion, marketing, advertising, use, and display of the National Signs Trademarks, (a) the public and the trade have come to recognize that the marks refer to high quality custom sign design and manufacturing services and products emanating from a single source of origin, and (b) the National Signs Trademark has gained secondary meaning and extensive goodwill.

20. On January 9, 2017, National became aware that Al Ross had acquired Brite-Lite Signs and rebranded that competitive business as Nationwide Signs. Exhibit 1 (Nationwide's January 9, 2017 Announcement). At the same time, Nationwide rolled out its www.nationwidesigns.com website which, like its name, is virtually identical to the

National Signs website. Like National, Nationwide is based in Houston but seeks to compete with National across Texas and the United States. National gave immediate notice to Nationwide that its actions infringed the National Signs Trademark. Exhibit 2 (National's January 10, 2017 Letter to Nationwide).

21.     Nationwide's domain name and website are continuous and systematic means for Nationwide to be accessible to residents of Texas. Further, Nationwide specifically used these domain names to target the consumers of National, a Houston-based company. Nationwide intentionally registered, maintained, and used this confusingly similarly domain name and website content with the knowledge that these actions would cause injury to National in Texas.

22.     Nationwide has infringed National's mark in interstate commerce by various acts, including, without limitation, the selling, offering for sale, promotion and advertising its custom sign design and manufacturing services and products under the names Nationwide Signs of a type similar to the custom sign design and manufacturing services and products offered by National by the registration, maintenance, and operation of the domain name and website www.nationwidesigns.com.

23.     Nationwide's use of National Signs in connection with its custom sign design and manufacturing services and products is without National's permission or authority, and that use is likely to cause confusion, to cause mistake and/or to deceive.

24. Nationwide's use of Nationwide Signs in connection with custom sign design and manufacturing services and products has been made notwithstanding National's well-known and prior established rights in the trademark National Signs and with both actual and constructive notice of National's rights under the Lanham Act, the Texas Trademarks Act, and Texas common law.

25. Upon information and belief, Nationwide's infringing activities have caused and – unless enjoined by this Court – will continue to cause irreparable injury and other damage to National's business, reputation, and good will in its National Signs Trademark. National has no adequate remedy at law.

26. Despite Nationwide's actual knowledge of National's prior and superior trademark rights, as well as National's clear and unambiguous objections to such infringing activities, Nationwide continues to use "Nationwide Signs" in commerce. Exhibit 2 (National's January 10, 2017 Letter to Nationwide).

27. The "Nationwide Signs" name is confusingly similar to the National Signs Trademark and name. The parties' products and services are sold in the same channels of trade to the same class of purchasers and bear a similar purchase price. The parties share many of the same target industries and customers.

28. The continued operation of Nationwide's website bearing the "Nationwide Signs" name is likely to cause confusion, mistake and/or deception as to the source of origin of the custom sign design and manufacturing services and products in that the

public, the trade, and others are likely to believe mistakenly that National's services and products are, in fact, Nationwide's services products, or vice versa, and/or that National has somehow sponsored or approved Nationwide's use of "Nationwide Signs" as a mark.

29. This confusion is not merely theoretical. It has already occurred and continues to occur, as consumers have contacted National as to the confusion generated by Nationwide's announcement, which deliberately links Nationwide to National. Exhibit 1 (Nationwide's January 9, 2017 Announcement).

30. National is justifiably concerned that its company and the National Signs Trademark will be tarnished by the mistaken association with Nationwide because of Nationwide's conduct, as consumer confusion has occurred and, indeed, seems the likely intent of the decision to rebrand Brite-Lite Signs, a decades-old business in Houston with its own distinct reputation, to "Nationwide Signs."

31. On or about January 10, 2017, National, acting through its counsel, sent a cease and desist/demand letter to Nationwide and Al Ross, in which National demanded, that Nationwide cease all use of the Nationwide Signs mark, or any other mark similar to National Signs, with respect to any custom sign design and manufacturing services and products, and to cease all active promotion of the Nationwide Signs domain name. Exhibit 2 (National's January 10, 2017 Letter to Nationwide).

CAUSES OF ACTION

## COUNT ONE: FEDERAL TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, AND UNFAIR COMPETITION

32. This is a claim for trademark infringement, false designation of origin, and unfair competition arising under Section 43 (a) of the Lanham Act, 15 U.S.C. §1125(a). Nationwide's unauthorized use of the National Signs Trademark and the confusingly similar "Nationwide Signs" name in connection with Nationwide's services and products constitutes willful trademark infringement, false designation of origin and unfair competition to the substantial and irreparable injury of the National and of National's business reputation and goodwill. Similarly, Nationwide's unauthorized use of the National Signs Trademark and the confusingly similar "Nationwide Signs" name on the internet constitutes willful trademark infringement, false designation of origin, and unfair competition.

33. Nationwide's wrongful acts have caused and, unless restrained by this Court, will continue to cause serious irreparable injury and damage to National and to the goodwill associated with National's registered mark. National has no adequate remedy at law. In addition to injunctive relief, National is entitled to recover its actual damages, treble damages under the Lanham Act and the Texas Trademarks Act, and attorney's fees.

## COUNT TWO: COMMON LAW TRADEMARK INFRINGEMENT
## AND UNFAIR COMPETITION

34. Nationwide's unauthorized use of the Nationwide Signs name and mark is likely to cause confusion, mistake and/or deception to the public and the trade as to the origin, source, sponsorship or quality of National's goods and services in that the public and the trade will believe that National's goods and services originate and/or are otherwise authorized by Nationwide, and vice versa.

35. Nationwide's aforementioned acts were done with full knowledge of National's prior rights in the National Signs Trademark and with the full knowledge of the substantial reputation and goodwill associated with National. Nationwide proceeded without any license or authority to create an association with the National Signs Trademark. By appropriating National's years of goodwill in the National Signs Trademark, Nationwide will unjustly enrich itself and cause damage to National.

36. Nationwide's use of the designation "Nationwide Signs" on or in connection with the Internet constitutes unauthorized use of the National Signs Trademark, and is likely to cause consumers to mistakenly believe that the services and products distributed with the indicia "Nationwide Signs" are affiliated or associated with National or the National Signs Trademark, or vice versa.

37. Nationwide's conduct is blatant, willful and intentional and is undertaken with the full knowledge of National's prior, superior rights in its National Signs Trademark. As a result, Nationwide's activities constitute unfair competition and an

infringement of National's common law trademark rights in the name National Signs within the State of Texas and in other states where National has established the mark.

38. Nationwide's conduct constitutes common law trademark infringement and unfair competition with National which is causing immediate and irreparable harm to National and to National's goodwill. National will continue to be damaged and the public will continue to be deceived unless Nationwide are enjoined by this Court. National has no adequate remedy at law. In addition to injunctive relief, National is entitled to recover its actual damages, treble damages under the Lanham Act and the Texas Trademarks Act, and attorney's fees.

## COUNT THREE: TRADEMARK DILUTION AND INJURY TO BUSINESS REPUTATION UNDER STATE LAW

39. The National Signs Trademark constitutes a famous mark in Texas as contemplated by Section 16.103 of the Texas Business and Commerce Code, and became widely recognized well before Nationwide's first unauthorized use of the confusingly similar facsimiles of the Trademark (to wit, Nation**wide** Signs). Nationwide's unauthorized use and publication of unauthorized facsimiles of the National Signs Trademark, including Nation**wide** Signs, are likely to dilute and blur the distinctive quality of the National Signs Trademark and to tarnish that Trademark.

40. Nationwide has injured and will continue to injure National's business reputation, and has created a blurring and tarnishing of the National Signs Trademark. Because the evidence clearly demonstrates that Nationwide willfully intended to cause

the dilution of the National Signs mark, Nationwide is not only entitled to an injunction under Section 16.103 of the Texas Business & Commerce Code, but is also entitled to the other statutory remedies provided by the Lanham Act and the Texas Trademark Act, including treble damages and attorney's fees.

## INJUNCTIVE RELIEF

National will suffer immediate and irreparable harm, loss, and damage in the form of lost profits, loss of market share, loss of good will, and a significant decrease in business directly resulting from Nationwide's wrongful and unfair acts unless this Court issues a Temporary Restraining Order enjoining Nationwide, together with its agents, representatives and all others in active concert or participation with it, including Ali Rassouli aka Al Ross, from:

- marketing, advertising, publishing, or otherwise using the Nationwide Sign mark or name, or any other mark or name likely to cause confusion with the National Signs Trademark;

- infringing the National Signs Trademark;

- creating by any acts or devices, any impression that Nationwide's goods or services have any association, connection or affiliation with National or the National Signs Trademark;

- competing unfairly with National;

- diluting, blurring, and/or tarnishing the distinctive quality of National's National Signs Trademark;

- exploiting National's identity for Nationwide's commercial benefit without authorization;

- engaging in any other conduct that is likely to cause confusion or to cause mistake or to deceive as to the source, affiliation, connection, or association of National's products or services with Nationwide; or

- maintaining any website using "nationwidesigns.###" or any domain with a name that is confusingly similar to National Signs Trademark.

Unless enjoined, Nationwide has made it apparent that it will directly continue to infringe on the National Signs mark and unfairly compete with National, including the above-stated actions. If Nationwide is not restrained, it will continue to cause National to suffer imminent and irreparable harm for which there is no adequate remedy at law. Nationwide's actions were and are specifically designed to gain an unfair advantage over and to unfairly compete with National. In the absence of a temporary restraining order and temporary injunction, National's famous and valuable National Signs Trademark will be diminished and diluted, and National will suffer market confusion and a loss of the goodwill associated with its mark and its business.

National has a probable right of recovery against Nationwide for the claims stated above. National has provided Nationwide with sufficient notice of this application and the hearing on the merits, consistent with Federal Rule of Civil Procedure 65. National is willing and able to post bond, in an amount ordered by the Court in support of any injunctive order issued by the Court.

To prevent Nationwide's continuing violations of the Lanham Act, the Texas Trademark Act, and Texas common law duties owed to National, and the irreparable harm and additional unlawful conduct that will result therefrom, and to preserve the

integrity of the National Sign Trademark and the associated goodwill, National requests that the Court enter a temporary restraining order as requested above, set a temporary injunction hearing, and after that hearing, that the Court temporarily enjoin Nationwide, together with its agents, representatives and all others in active concert or participation with it, including Ali Rassouli aka Al Ross, from engaging, directly or indirectly, through any person or entity, in any of the following activities pending a final trial on the merits:

- marketing, advertising, publishing, or otherwise using the Nationwide Sign mark or name, or any other mark or name likely to cause confusion with the National Signs Trademark;

- infringing the National Signs Trademark;

- creating by any acts or devices, any impression that Nationwide's goods or services have any association, connection or affiliation with National or the National Signs Trademark;

- competing unfairly with National;

- diluting, blurring, and/or tarnishing the distinctive quality of National's National Signs Trademark;

- exploiting National's identity for Nationwide's commercial benefit without authorization;

- engaging in any other conduct that is likely to cause confusion or to cause mistake or to deceive as to the source, affiliation, connection, or association of National's products or services with Nationwide; or

- maintaining any website using "nationwidesigns.###" or any domain with a name that is confusingly similar to National Signs Trademark.

Moreover, upon final hearing or trial hereof, National further prays that the Court permanently enjoin Nationwide from engaging in any of the described acts.

JURY DEMAND

NATIONAL RESPECTFULLY REQUESTS A TRIAL BY JURY ON ALL ISSUES OF FACT IN THIS CASE.

PRAYER

WHEREFORE, National Signs, LLC respectfully prays that this Court advance this case on the docket, order a speedy hearing at the earliest practicable date, cause this case to be in every way expedited, and that, on such hearing to this Court, that it enter orders and judgment:

- Preliminarily and permanently enjoining Nationwide, its employees, agents, licensees, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with any of them, including Ali Rassouli aka Al Ross and any entities controlled in whole or in part by Nationwide or any entities created by Nationwide in the future, pursuant to the Lanham Act and the Texas Trademarks Act, from (i) marketing, advertising, publishing, or otherwise using the Nationwide Sign mark or name, or any other mark or name likely to cause confusion with the National Signs Trademark; (ii) infringing the National Signs Trademark; (iii) creating by any acts or devices, any impression that Nationwide's goods or services have any association, connection or affiliation with National or the National Signs Trademark; (iv) competing unfairly with National; (v) diluting, blurring, and/or tarnishing the distinctive quality of National's National Signs Trademark; (vi) exploiting National's identity for Nationwide's commercial benefit without authorization; maintaining any website using "nationwidesigns.###" or any domain with a name that is confusingly similar to National Signs Trademark; and (vii) engaging in any other conduct that is likely to cause confusion or to cause mistake or to deceive as to the source, affiliation, connection, or association of National's products or services with Nationwide;

- Awarding National monetary relief on its Lanham Act claims, including National's actual damages, including its lost profits, a disgorgement of Nationwide's profits, statutory damages and treble damages as permitted under the Lanham Act and the Texas Trademarks Act for Nationwide's acts of

willful trademark infringement, false designation of origin, dilution, unfair competition, and cybersquatting, as determined to be appropriate at trial;

- Directing that Nationwide relinquish all rights in the Internet domain name www.nationwidesigns.com, and transfer the Internet domain name to National, as contemplated by 15 USC § 1125(d)(l)(C);

- Directing that Nationwide file with the Court and serve upon National's counsel within thirty days after entry of judgment a report in writing and under oath as provided in 15 USC § 1116 setting forth in detail the manner and form in which Nationwide has complied with the requirements of the foregoing injunction and orders;

- Directing that Nationwide account for all gains, profits, and advantages derived from its acts of trademark infringement, false designation of origin, unfair competition, cybersquatting, and for its other violations of law as contemplated by the Lanham Act and Section 16.104 of the Texas Business & Commerce Code;

- Awarding National compensatory damages on its state law claims as determined to be appropriate at trial, including treble damages as contemplated by Section 16.104 of the Texas Business & Commerce Code if the Court determines that Nationwide committed the wrongful acts in bad faith;

- Awarding National its attorneys' fees, costs, and disbursements as contemplated by 15 U.S.C. § 1117, Section 16.104 of the Texas Business & Commerce Code, and general equitable principles;

- Awarding National punitive and exemplary damages as determined to be appropriate at trial on its state law claims for Nationwide's willful and wanton violation of National's rights;

- Awarding National pre-judgment and post-judgment interest to the maximum extent permitted by law; and

- Granting such other relief as may be just and proper.

Respectfully submitted,

*/s/ John H. McFarland*
John H. McFarland
jmcfarland@jmlawyers.com

Texas State Bar No. 00794270
Federal ID No. 19423
J‍OYCE + M‍CF‍ARLAND LLP
712 Main Street, Suite 1500
Houston, Texas 77002
Tel 713.222.1114 | Fax 713.513.5577

ATTORNEYS FOR PLAINTIFF
NATIONAL SIGNS, LLC